## ABILENE & S. RY. CO. v. HERMAN.

### No. 719.

Court of Civil Appeals of Texas. Eastland.

Sept. 12, 1930.

Rehearing Denied Oct. 24, 1930.

T. D. Gresham and R. S. Shapard, both of Dallas, and Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellant.

Scarborough, Ely & King, of Abilene, for appellee.

HICKMAN, C. J.

Appellee sued appellant for damages to his crops, occasioned by the alleged negligence of appellant in permitting waste fuel oil to escape from its premises and find its way into Cedar creek, and thence to appellee's land. For many years appellee had irrigated 12 acres of land with water taken from Cedar creek, and it was alleged, in substance, that on account of the presence of oil in the water he was unable successfully to irrigate his land during the years 1927, 1928, and 1929. Damages were limited to such as accrued after March 14, 1927, two years prior to the filing of the original petition. By an amended petition recovery was sought for damages sustained during the year 1929. We find it unnecessary to make a more detailed statement of the pleadings or of the evidence, but in connection with the point discussed shall set forth the evidence relating thereto.

The case was submitted to the jury on special issues, and in answer thereto the following findings were made:

"1. Appellant negligently permitted oil to escape from its premises on to the premises of appellee.

"2. Such negligence was the proximate cause of the damages to appellee's crops.

"3. $3,000.00, paid now, will reasonably compensate appellee for injuries to his crops approximately caused by the negligence of appellant."

By an appropriate assignment it is presented that, under the measure of damages given by the court, appellee was not entitled to the sum of $3,000, or any other sum. A careful consideration of the evidence has convinced us that this assignment should be sustained.

Special issue No. 3 was as follows:

"What amount of money, if paid now, will reasonably compensate the plaintiff for injuries, if any, to his crop, proximately caused by the negligence, if any, of the defendant? In answering the foregoing question No. 3, the measure of damages will be the difference, if any, between the reasonable market value of the crop which plaintiff reasonably could have expected to have raised upon the premises but for the presence of oil, if any, in the irrigation water, and the reasonable market value of the crop which he actually raised upon said premises, less the reasonable expenses of seeding, cultivating and marketing."

The only evidence upon which the jury could base an answer to the above issue was some testimony as to the profits which appellee had earned by the cultivation of the land during the years 1924, 1925, and 1926, and testimony that no profits were earned during the years 1927, 1928, and 1929. With reference to the profits during the three years first above named, Mrs. Henry Herman, wife of appellee, testified as follows:

"I know about how much we were producing per acre on the stuff that we were irrigating. We were producing about $600.00 per acre on the stuff we were irrigating.

"We were able to sell what we produced from this property that we irrigated. There was a regular market for that kind of product here in Abilene. We did sell it on that market. It averaged bringing and we got about six hundred dollars per acre.

"It took some work to produce that stuff. It took lots of work to produce it. In 1927 we made practically nothing. We had good crops before that, except when the floods and hail hit it. * * *

"In 1927, whenever we would put water on there it would just gradually dry up. It would just burn up. The stuff just dried and burned up. * * *

"We irrigated some during 1928, but we did not irrigate any in 1929. We tried it a little in 1928. We had bad luck in 1928. When we irrigated in 1928 it killed the crop. When we put it on it killed the crop."

The appellee, Henry Herman, testified as follows:

"I had always had good crops up until 1927. Up to 1927 I had good crops. I was able to irrigate that twelve acres out of the creek. I was able to irrigate every bit of it.

"When I started I shipped my stuff. Since then I have had a good market for my stuff here in town. I was able to market all I had here at Abilene.

"My market during the years 1924, 1925 and 1926 was right here in Abilene. I got the market price for my products. I always got whatever I asked for it and sometimes I got my own price for it.

"The average amount per acre, by the year, that I received from the sale of my products was about $600.00. I averaged about $600.00 per acre by the year.

"It cost me something to grow that. It cost me about one-half or more than one-half of that much. I could not do it by myself. I have to have labor to help with the irrigation. It costs lots of money.

"I really can't say what my net profits amounted to, after paying for my labor and expense of producing my crop. I never did figure. I do not believe it was half net profit. It was not quite half net profit. It could hardly be half net profit. The net profit could not be much over two hundred dollars per acre; sometimes three hundred dollars. My net profit was from two hundred to three hundred dollars per acre per year. * * *

"In 1928 I did not make a very good crop. I used some water there in 1928. I irrigated some. The effect of using that water on my garden was that it looked to me like every time I watered the stuff it kept doing worse. The condition in 1927 was the same.

"The effect of the oil upon the vegetation was that it simply rotted out. The stuff rotted and died. It got to looking yellow and sickly.

"I did not make much per acre this year on that property. I made some above my expenses. I did not have anything left above my expenses. `

"I did not make much in 1928, above my expenses. I made a mighty little above my expenses in 1928. I would not have gotten by but for that other place.

"I did not make as much as my expenses in operating this twelve acres in 1928. I did not make that much. I did not make anything net. I did not make anything in 1927.

"* * * During 1927 I irrigated there during the summer. I irrigated some in 1928 but not very much. Early in 1928 I irrigated a little. I could not irrigate in the summer. I did not irrigate very much in the fall. During 1929 I tried to irrigate some in the spring. I commenced to put in my crop. I tried to irrigate. Everything rotted. I did not want to put the water on in that shape. I did not irrigate at all this year."

The record is silent as to the market conditions during the years 1927, 1928, and 1929. Neither is there any evidence of the labor conditions during those years, or of the reasonable expense of seeding, cultivating, and marketing such crops as appellee could have reasonably expected to raise. As noted, in answering issue No. 3 the jury had to determine the reasonable market value of the crops which appellee could reasonably have expected to raise but for the presence of oil, the reasonable market value of the crops which he actually raised, and also the reasonable expense of seeding, cultivating, and marketing. There is no evidence that the market value of such crops as appellee planted was the same during the years 1927, 1928, and 1929 as it was during the three prior years. Neither is there any evidence that the expenses of seeding, cultivating, and marketing would have been the same during the two periods. In order to answer this issue under the evidence, the jury had to assume the market value of the crops based alone upon evidence of their value during prior years, with no evidence of market value during the period inquired about. The verdict was therefore based upon an assumption or conjecture.

Appellee contends that the rule applicable to lost profits to an established business occasioned by the interruption of that business through the wrongful act of another governs, and that a showing of the profits accruing from his business during prior years afforded sufficient evidence upon which to estimate profits which would have accrued during the years covered by his suit. We do not decide, because the record does not call on us to decide, whether the rule applicable to a mercantile business could ever be made to apply to damages to crops. Even if such rule were applicable, which we question, the verdict could find no support therefrom, because that theory was not submitted to and determined by the jury. The question of market value during the period covered by the suit was alone submitted, and since there was no evidence thereof, the answer of the jury has no support.

Our views on the question discussed render it unnecessary to discuss the other assignments.

The judgment of the trial court will be reversed, and the cause remanded.